PHILLIPS v. HATCH. See Case No. 11,094.

---

## Case No. 11,102.

### PHILLIPS v. INSURANCE CO. OF PENNSYLVANIA.

[1 Jour. Jur. (1821) 250.]

Circuit Court, Pennsylvania.[1]

VALUATION OF FOREIGN COIN—PRIVATE CONTRACTS—USAGE—MARINE INSURANCE—CARGO INVOICED IN RUPEES.

[1. The act of March 2, 1799, § 61, fixing the value of the rupee at 55½ cents, was only for the purposes of ascertaining the amount of customs duties, and had no effect in determining the value of the rupee in respect to contracts between private parties, as in case of the insurance of a cargo invoiced in rupees.]

[2. Where it was alleged that, in effecting insurance upon cargoes from India, it was the custom of merchants to contract in reference to the valuation of the rupee fixed by the act of congress for purposes of customs duties, held, that the burden was upon the party alleging the custom to show that the other party as well as himself contracted in reference to it, or, if this was not actually true, to show that the custom was so general and notorious that both parties must have had it in mind.]

[3. In determining the amount to be paid for loss of a cargo from Calcutta which was invoiced in rupees, the rupee should be estimated at its actual value in Calcutta when the cargo was purchased.]

Construction of the act of congress, 2d March, 1799, in relation to foreign coins.

Usage of merchants.

This was an action of covenant on an open policy of insurance for twenty-one thousand dollars on goods on board the ship Nancy from Calcutta to New York. There was no dispute as to the ownership or loss. The only question was as to the amount of the plaintiff's interest on board. The plaintiff's invoice at Calcutta was 199,925 sicca rupees; 9 an. 2 p. There had been previously insured at other offices 91,591 dollars 25 cents. The plaintiff's point was, that in estimating the amount of the invoice the rupee should be calculated at 55½ cents, which left 19,367 dollars 43 cents uncovered by the previous policies and insured at the defendants' office. The defendants contended that a rupee should be estimated only at 47½ cents, at which rate only 3353 dollars 12 cents were to be paid. The insurance was effected on the 26th December, 1800, at which time the plaintiff gave his note

[1] [District and date not given.]

at seven months for 2100 dollars, the premium on the whole sum of 21,000 dollars at ten per cent. The abandonment, proof of loss. &c., were made in January, 1801. The defendants then refused to pay more than 3353 dollars 12 cents, alleging short property, as above stated. On 29th July, the plaintiff's note for the premium became due, and was paid at the Bank of Pennsylvania, where it had been deposited for collection, and the amount was carried to the credit of the defendants on the books of the bank. To show that the rupee ought to be estimated at 55½ cents, the plaintiff relied upon: 1. The act of congress of March 2, 1799, § 61,—4 Laws [Folwell's Ed.] 379 [1 Stat. 673],—fixing the value of the rupee at 55½ cents. 2. The custom and understanding of merchants, who had always taken that to be the rule, and had made their estimates accordingly in effecting insurances. In support of this position they produced as witnesses several eminent merchants engaged in the India trade, who testified that in making their insurances so as to cover their risks, they had estimated the rupee at 55½ cents, considering the value to be fixed by the act of congress, and this they believed to be the general understanding among merchants, and the guide by which they had been regulated in calculating the amount they were to insure. The witnesses stated that they had paid premiums upon the calculation of that estimate of the rupee, and if a lower one was now established, the insured in numerous policies would have claims to a large amount for return premium. Only one case, however, was adduced in which a loss had been paid at 55½ cents, and this was the case of the ship Lewis. insured at Baltimore, and done without objection. In the case of The Mermaid, the Insurance Company of North America refused to settle upon an estimate of 55½ cents to the rupee, but offered 55, which was accepted by the agent of the insured, he thinking it better, as he said, to take that than to have a controversy. The loss in the case of The Washington [unreported], in 1797, was compromised at 52½. The case of The India [unreported], in 1800, was upon a return premium, and the rupee, in that case, was estimated at 55½ cents. The witnesses all testified that they considered 55½ cents as an estimate above the real value of the rupee, but as the government had adopted it, they had adopted it also. Representations had been made to congress by the merchants, and it was now reduced to 50 cents; but this was since the insurance in question. 3. The cost of the rupee at Bengal to the plaintiff at the time he purchased his cargo. The supercargo stated in his deposition that a great part of the cargo at Calcutta was purchased with the avails of bills of exchange drawn by the captain upon London at six months' sight, at the rate of 2s. 8d. sterling the rupee, and that goods could not be purchased at that time upon better terms for cash than for those bills. 4. That the defendants, by receiving the whole premium,

after knowing that its amount was founded upon the calculation of 55½ cents to the rupee, had affirmed and adopted that estimate, and were thereby concluded from objecting to it.

The defendants contended that, the policy being open, they were bound to pay only the real value of the goods at the place of shipment; and, that value being expressed in rupees, the mode of ascertaining it in dollars was by comparing the value of one in exchange for the other at Calcutta. They therefore called several witnesses who proved that the average exchange of rupees and dollars at Calcutta, for several years, had been from 210 to 214 rupees for 100 dollars, making the rupee worth from 46½ to 47½ cents. They further testified that rupees were raised when bills of exchange on Europe were given for them. By an assay of a sicca rupee at the mint, its real value was found to be 47 cents 3 mills.

In answer to the plaintiff's positions they argued: 1. That the act of congress fixed the value of the rupee only in estimating ad valorem duties, leaving it. as to all other purposes, untouched. 2. That no such uniform practice was proved as amounted to a custom binding on the parties, nor such a general understanding as to render it a part of the contract by an implied adoption of it by the parties. To show that the defendants had not acted upon it, they proved that in August, 1800, the insured on the cargo of the ship George Barclay claimed from them a return premium, on account of short property, and the office, ascertaining that the rupees had cost but 47½ cents, allowed the claim, and returned a part of the premium accordingly. The policies on the ship Richmond, in 1798, were valued, and the rupee fixed at 52½ cents. 3. That they ought not to be involved in the inquiry of what the rupee cost the particular merchant. This cost varies from a variety of circumstances, as whether he buys with ready money, or on credit, with cash or bills, and, if with bills, the length of sight, the credit of the drawer, the balance of exchange between the place of drawing and that drawn upon, &c. With these the insurer has nothing to do. The fair current market price of rupees in exchange for dollars at the time of shipment ought to be the rule. 4. They denied that the receipt of the premium affirmed the plaintiff's estimate of the rupee. The premium is supposed to be paid when the insurance is effected, there being a receipt for it in the body of the policy; and when, for the convenience of the merchant, notes are taken, they are always deposited in bank for collection, and payment received as a matter of course, without any prejudice to either of the parties. It might as well be said that the plaintiff, by paying the premium, admitted himself to be our debtor at the time, and is now estopped from saying we were then his.

The plaintiff's counsel, in reply, contended that, if the value of the rupee was to be estimated by its exchange for dollars, the expense

of carrying the dollars to India was fairly to be reckoned a part of the cost of the rupees, so that if the insurance on dollars be ten per cent., and the freight fifteen, a dollar in India, in exchange for rupees, ought to be reckoned at 125 cents, and then 100 dollars for 212 rupees make the rupees higher than 58 cents.

Tilghman & Ingersoll, for plaintiff.
Rawle & Lewis, for defendant.

TILGHMAN, Chief Judge. Insurance is, as has been frequently declared, a contract of indemnity. The insurer undertakes that, if the goods insured are lost by any of the risks insured against, he will pay the insured the value of those goods at the time and place of shipment; and this value is generally to be ascertained by the invoice. In this case the invoice is in rupees. To ascertain, therefore, the value of the cargo, the value of the rupee must be ascertained. This is the point in dispute. The plaintiff contends that the rupee should be valued at 55½ cents. He endeavors to support his position, 1st. By the act of congress. 2d. By the custom of merchants; or at least a general usage and understanding among them. 3d. The actual cost of the rupee to him, which he contends was also its current value at Bengal at the time of the purchase of the cargo.

1. It is the opinion of the court, that the act of congress does not affect the present question between these parties. That act was intended to fix the value of foreign coins, only for the purpose of ascertaining the amount of duties.

2. No custom, strictly speaking, is proved, or much relied on. But the testimony of several merchants is adduced to show under what opinion as to the value of the rupee they effected insurances and paid premiums. They founded this opinion, not on what they imagined was the true value of the rupee, but under an idea that it was regulated by the act of congress, and this they say they believe to have been the general understanding. But it is not brought home to the defendants that they ever acted upon this principle. On the contrary, in August, 1800, but four months before this policy was underwritten, they actually returned premium for short property, calculating the rupee only at 47½ cents. In order to make this understanding obligatory on the defendants in this case, knowledge of it ought to be brought home to them. It is not enough that the plaintiff understood it so; the defendants must have acted upon the same principles, thereby impliedly, though not expressly, incorporating it into, and making it a part of, the contract. When men enter into a contract, it is presumed that they proceed upon the general principles of law. It is not competent for one of the parties to vary the operation of law in relation to the particular contract by alleging that he was governed by other principles, or acted in reference to a certain usage or understanding prevailing among a certain class of men. The other party must have acted upon the same grounds, otherwise the general principles and intendment of law will prevail. The party, therefore, setting up an usage or understanding varying the effect of a contract from what it would be by the general operation of law, must show that both parties acted in reference to it, or, if not actually proved, it must appear to have been so general and notorious as to warrant the conclusion that both contracted on that ground, with the knowledge and adoption of it. This has not been done in the present case, and of course this ground does not avail the plaintiff.

3. The actual cost of the rupee to this particular party cannot certainly be obligatory upon the defendants, or otherwise affect the case than as evidence of its current value at the time.

The real question then is what is the value of a rupee in Bengal, or rather what was it when the goods in question were purchased. This is a matter of fact, and peculiarly a mercantile question. The jury must decide it from the evidence. Testimony has been given of the value of the rupee upon an assay at the mint, of its value in India in comparison with dollars, and of its value there in comparison with sterling money, in purchase of bills of exchange. The comparative value between rupees and dollars, so far as fineness and weight of coin is considered, is eternally the same, and is accurately ascertained by the mint assay; and that would be the proper guide if its value here were the question. But as the question is the commercial value of the rupee in Bengal, where it seems to be an article of commerce and subject to some fluctuation, the mint assay is not conclusive in this case. The comparative commercial value in India between dollars and rupees is probably not very different from the real intrinsic value, judging either from the testimony or the nature of the subject; and there appears to be no objection to taking this comparison as the guide. The comparison with bills seems to be more fluctuating, and dependent in a degree upon circumstances by which the insurer cannot be affected. It affords, therefore, in general, not so safe a guide. Though in this particular case, if the jury give full credit to the supercargo, there was no difference in the price of rupees when purchased with dollars and with bills. The law and the evidence being before the jury, they will estimate the value accordingly.

It is the opinion of the court, however, that the expense of carrying the dollars from this country to Bengal is not to be taken at all into the calculation; otherwise the subject would be involved in endless questions. Neither was the receipt of the premium such an affirmance of the plaintiff's estimate of the value of the rupee, as to preclude the defendants from now controverting it. The defendants had given notice to the plaintiff that they objected to pay the whole amount of the policy, on the ground of short property. The point in dispute was fully understood. Dur-

ing the controversy the note falls due. Being in bank, it is paid in the ordinary course of business, without being intended by either party to affect the matter in dispute, and in point of law it does not affect it.

The jury found for the plaintiff his whole demand, grounding themselves, as was understood, on the testimony of the supercargo, or more probably because it was an insurance case.